UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY BROADUS                              CIVIL ACTION

VERSUS                                     NO: 08-1201

CSX TRANSPORTATION, INC.                   SECTION: R(4)

**ORDER AND REASONS**

Before the Court is defendant CSX Transportation, Inc.'s Motion in Limine to exclude or limit the expert testimony of plaintiff's expert Jimmy Scott. For the following reasons, the Court DENIES the motion.

**I.   Background**

Plaintiff Larry Broadus worked as a railroad engineer for defendant CSX Transportation, Inc. Plaintiff alleges that he sustained a back injury when he slipped and fell on mainline ballast while walking in between the No. 6 and 7 switches in CSXT's Sibert Yard in Mobile, Alabama on April 25, 2006. Ballast

is a gravel rock used in the railroad industry. There are two types of ballast: mainline and yard. Mainline ballast is larger and is used to support railroad tracks. Yard ballast is smaller and is used as a walking surface in railroad yards. Plaintiff alleges that CSXT breached its duties under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, *et seq.*, by putting larger, mainline ballast in the yard, rather than yard ballast, which he alleges compacts more easily and thus is a safer walking surface.

**II. Legal Standard**

A district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See General Electric Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified ... by knowledge, skill, experience, training or education," may testify when specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993). For the testimony to be admissible, Rule 702 requires that (1) the testimony be based on

sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. *Id.*

In *Daubert*, the Supreme Court held that Rule 702 requires a district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence — in other words, whether it is relevant.

*See id.* at 591.

## III. Discussion

Defendant moves to exclude the expert testimony of Jimmy Scott, a former CSX employee with over 39 years of experience in the railroad industry. Plaintiff intends to have Scott testify that CSX was negligent because yard ballast is a safer walking surface than mainline ballast. Defendant contends that Scott's testimony is based on unreliable principles and methods, since it is only supported by his own opinion.

Plaintiff asserts that Scott is qualified as an expert based on his knowledge and experience with railroad operations. Scott was on a railroad safety committee that addressed the issue of ballast (Scott Depo., 130:2-6) and attended "track school." (Scott Depo., 160:21-24). He has worked in the railroad industry for over 39 years in various positions including Road Foreman of Engines, General Road Foreman, District Road Foreman of Engines, Locomotive Engineer, and Conductor. Scott is now a railroad operations consultant.

Defendant is contesting the reliability of Scott's testimony. *Daubert* established a list of factors that courts may use in evaluating the reliability of expert testimony: whether the expert's theory or technique (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a

4

known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593 (1993)). The *Daubert* analysis is "flexible" and the factors may or may not apply "depending on the nature of the issue, the expert's particular expertise, and the subject of the testimony." *Pipitone*, 288 F.3d at 244 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Trial courts have broad discretion in determining whether the *Daubert* factors are or are not reasonable measures of reliability in a particular case. *Id.* (citing *Kumho Tire*, 526 U.S. at 153). In cases where expert testimony is based primarily on experience or training, it may not be appropriate to invoke the *Daubert* factors. *See Liriano v. Hobart corp.*, 949 F. Supp. 171, 177 (S.D.N.Y. 1996) ("Properly understood, the *Daubert* analysis applies to cases involving unique, untested, or controversial methodologies or techniques. It is not appropriate to invoke the *Daubert* test in cases where expert testimony is based solely on experience or training, as opposed to a methodology or technique.").

Scott's expert testimony does not easily fit within a *Daubert* analysis. Scott's expert report states that his opinions

5

are based on: (1) interrogatories, (2) site inspection, (3) photographs, (4) request for production, (5) depositions, (6) CSX Operating Rule Book, (7) CSX Safety Rules, (8) CSX Safe Way, and (9) his 39 years of experience in train operations. His testimony, while "specialized knowledge," see Fed. R. Evid. 702, is not scientific or technical. Rather, it is based on his years of experience in railroad operations. As his testimony is primarily based on experience, there is no clear application of the *Daubert* factors. *See Emig v. Electrolux Home Products Inc.*, 2008 WL 4200988 at *7 (S.D.N.Y. 2008) (*Daubert* factors do not fit easily in a case where experts rely solely on their experience in forming their opinions). The Court will not preclude Scott's testimony because of his failure to satisfy the *Daubert* factors. Instead, the Court will inquire into whether his opinion is reliable enough to present to a jury, keeping in mind that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996).

In his expert report, Scott concludes that Broadus's injury was caused by the placement of mainline ballast, an improper walking surface, in the yard. Scott's conclusion essentially has two parts: (1) that yard ballast is safer for walking than

mainline ballast and (2) that Broadus fell because CSX used mainline ballast where it should have used yard ballast.

Scott bases the first part of his conclusion on his experience in train operations and on the safety committee, where it is "common knowledge" that yard ballast is safer for walking than mainline ballast. (Scott Depo., 113:7-15). Scott sufficiently explains how he came to his conclusion. He states that yard ballast, which is much smaller, makes a more suitable walking surface since it is small enough to compact and smooth out. In contrast, mainline ballast "doesn't hold in place, especially on a slope, like smaller ballast does. It has a tendency to roll under your feet." (Scott Depo., 144:13-16). The Court finds that this part of Scott's conclusion is sufficiently reliable. Scott's conclusion is not overly complex. His 39 years of railroading experience, which included a great amount of observing and walking on ballast, and service on the railroad safety committee, which corrected unsafe walkways, are sufficient bases for his conclusion that walking on yard ballast is safer than walking on mainline ballast.

The second part of Scott's conclusion, that Broadus's fall was due to the improper placement of mainline ballast in the yard, was based on his site inspection, review of depositions, interrogatories, and photographs, and experience. In his report,

7

Scott noted that Broadus was "walking to the switchman's shanty" and that "[y]ard ballast should always be used on switch leads and other areas that require daily walking activities." Scott based his determination of where the accident occurred on depositions. Scott based his determination that yard ballast should have been used in that area on his site inspection and experience that areas such as switch leads require frequent walking. Scott's experience with the safety committee also provides a basis for his conclusion. The safety committee made determinations as to where walkway ballast should be placed if walking became more frequent in an area (Scott Depo., 130:2-6), and thus Scott had experience in determining when heavy foot traffic required the use of yard ballast. The Court finds that this experience renders Scott's conclusions sufficiently reliable.

Still, the Court will restrict Scott's testimony inasmuch as it concludes that the improperly-sized ballast caused plaintiff's back injury. Scott is not a physician, and while his experience in railroad operations may allow him to conclude that the mainline ballast caused plaintiff to slip and fall, his experience does not support a determination that the fall caused plaintiff's back injury.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES defendant's Motion in Limine.

New Orleans, Louisiana, this __12th__ day of May, 2009

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE